# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELENA JOY MCCONCHIE,

Plaintiff-Appellant,

v

JOSHUA DAVID VOIGHT,

Defendant-Appellee.

FOR PUBLICATION
September 15, 2015
9:20 a.m.

No. 326651
Livingston Circuit Court
Family Division
LC No. 10-044132-DZ

Before: SAWYER, P.J., and M. J. KELLY and SHAPIRO, JJ.

SHAPIRO, J.

This is plaintiff mother's appeal from a March 4, 2015 order changing primary physical custody of the child from mother to defendant father. We vacate that order because it was issued and entered in violation of multiple procedural rules and substantive requirements, including: lack of a motion to change custody; failure to hold a full hearing, failure to make a determination regarding the child's established custodial environment, and failure to make a determination that proper cause or a change of circumstances justified reconsideration of the child's custodial situation.

The parties lived together for several years. In 2009, they had a child. On November 4, 2010, an order was entered granting mother sole legal and physical custody of the child.[1] On December 22, 2010, father filed a motion to have both legal and physical custody changed to joint. The parties reached an agreement resulting in dismissal of that motion and entry of a consent order on April 29, 2011 that gave the parties joint legal custody, but gave "sole physical custody" to mother with "reasonable and liberal [parenting time] as the parties agree." However, the order stated that the parties were living together and so child support was not ordered.

On September 18, 2013, father filed a motion to change custody. On the date set for hearing, the parties reached an agreement and a consent order was entered providing that father was to have parenting time alternate weekends and one midweek evening. The order also

---

[1] It is not clear from the record whether the parties were continuing to reside together at that time.

-1-

referred the matter to the Friend of the Court (FOC) for a statutory review of child support. On December 3, 2013, the FOC issued a Notice of Intent to Enter Proposed Child Support Order providing for child support payments of $303 per month from father to mother. On December 6, 2013, father filed objections to the proposed child support order. On February 28, 2014, the referee heard the objections, found that the FOC recommendation was accurate, and prepared a recommended order.

On April 8, 2014, father filed a motion for change of custody, alleging that the child was unsafe at mother's apartment because of an incident on March 29, 2014, when the five-year old child wandered into the hallway while his mother was asleep and was accidentally locked out of the apartment. The child was unhurt. Child Protective Services (CPS) investigated the incident and remained involved with mother and child for several months. A hearing on the motion to change custody was held on September 4, 2014. At the hearing, the CPS worker assigned to the case testified that the child was safe, mother's home was adequate, the incident was accidental, and—contrary to father's allegations—the mother did not have a substance abuse problem. Father also testified. The referee found that the child's established custodial environment was with mother and that there was neither proper cause nor a significant change in circumstances to justify considering a change in that custodial environment. Accordingly, she denied father's motion to change custody. The order also referred both parents to a family therapist and set a "parenting time hearing" for March 4, 2015. Father did not seek a de novo hearing or an appeal.

When the parties convened for that "parenting time hearing," the referee entered an order immediately transferring primary physical custody to the father. We vacate that order as it was the result of numerous legal errors.

The first two errors occurred before the referee's ruling and constituted violation of mother's right to due process:

> Due process is a flexible concept, the essence of which requires fundamental fairness. The basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard [*Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009) (citations omitted).]

The first violation occurred when a change of primary physical custody was considered at the March 4, 2015 hearing even though no motion to change physical custody was pending. Father's October 2014 motion had already been denied without appeal, no new motion had been filed, and there was no emergency that required the court to dispense with the requirements of fair notice provided by the rules governing motion practice and as a matter of due process.

The second violation occurred during the hearing. Father's counsel conducted a direct examination of the family therapist. The therapist's testimony was, for the most part, a recitation of father's allegations that mother's prescription medications, either as a result of abuse or prescribed use, were preventing her from waking up early enough in the morning to take the child to kindergarten, which resulted in several absences. The therapist opined that father's allegations regarding possible substance abuse might be true, and she expressed concern that the

child had missed multiple days of kindergarten.[2]  When mother's counsel sought to cross-examine the therapist, the referee stated that there was little time left in the single hour that had been set aside for the hearing.  Further, she required that if mother's counsel wished to cross-examine father's witness at all, mother would have to pay the witness at her professional rate for the time spent on cross-examination.  Moreover, the referee did not afford any time for mother to call her own witnesses nor did she continue the hearing for completion on another day.  The referee's actions denied mother an opportunity to be heard on a motion to change custody that had not even been filed and noticed for hearing.

The referee made several substantive errors in the course of making her ruling, including what appears to be a complete disregard of the substantive law governing a court's decision when considering a change of custody.  These requirements are well-known and clearly set out in *Vodvarka v Grasmeyer*, 259 Mich App 499; 675 NW2d 847 (2003).  First, the referee did not find that father had established proper cause, i.e., "one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken," nor did the referee find that father had established a material change of circumstances, i.e., that "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed."  *Id*. at 511, 513 (emphasis in original).  In the absence of such a finding, which presumably would only be made after a motion was filed and the nonmoving party had an opportunity to respond, it was improper for the referee to even consider a reevaluation of the best interest factors and the child's custodial situation.  See *id*. at 511, 513.[3]  Second, the referee failed to make a determination regarding the child's established custodial environment even though such a finding is necessary in order to determine the burden of proof.  See *id*. at 509.  Third, the referee made no mention of the best interest factors prior to ordering the change in custody.  See *id*. at 516.  She appears to have realized her error after the parties and their attorneys had left the courtroom and later that day, without the presence of parties or counsel, stated her best-interest findings from the bench.[4]

At a subsequent hearing, the referee stated that the failure to follow the *Vodvarka* framework did not matter because she had merely changed parenting time, not custody.  This suggestion is directly contradicted by the language of the order, which expressly provided that father would be the "primary custodian of the child."  The referee also suggested that there was

---

[2] The therapist testified that the child, according to father, had missed 22 days of kindergarten.  It was later revealed that the child only missed 11 days.

[3] In *Vodvarka*, we explained that the initial requirement that the court find proper cause or change of circumstances before reevaluating the child's custodial situation was "intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders."  *Vodvarka*, 259 Mich App at 509 (internal quotation omitted).

[4] Mother argues that the referee's findings on best interest were in error; however, we will not discuss those arguments in light of our decision to vacate the order because of other errors.

no such thing as "primary physical custody" in the law and that any issues regarding which parent provided the home for the child were merely parenting-time issues. Contrary to the referee's statement that physical custody is not mentioned in the Child Custody Act, MCL 722.21 *et seq.*, the phrase does appear in section 26a of that Act. See MCL 722.26a. Second, the meaning of the term "physical custody" has been well and repeatedly explained in caselaw. See *Dailey v Kloenhamer*, 291 Mich App 660, 670; 811 NW2d 501 (2011).

The referee's observation is correct insofar as we have recognized that not every modification of parenting time amounts to a change of physical custody and that the terms "physical custody" and "parenting time" are sometimes used without precision. Moreover, it is not always easy to ascertain at what point parenting-time changes rise to the level of a change in primary physical custody. This was recognized in *Shade v Wright*, 291 Mich App 17, 27; 805 NW2d 1 (2010), where we held that not all changes to parenting time are so significant that the child's established custodial environment is altered. We noted that the primary concern in child custody determinations "is the stability of the child's environment and avoidance of unwarranted and disruptive custody changes," while "the focus of parenting time is to foster a strong relationship between the child and the child's parents." *Id*. at 28-29. In this case, the basis for the custody change was father's allegation that the mother was not providing a stable environment, not that schedule changes should be made to assure his continuing relationship with the child. Further, the degree of change in this case is anything but modest. Father now has physical custody of the child all but every other weekend, which is the complete opposite of the previous arrangement. By contrast, in *Shade*, the change in parenting time resulted in a net reduction of about nine days per year in parenting time to the nonmoving party. *Id*. at 27 n 3. While there are cases where the line between a parenting time change and a custody change can be difficult to discern, this is not one; the facts in this case clearly speak to a change of custody. This was implicitly recognized by the referee, given that the best-interest factors she reviewed from the bench were those set out in MCL 722.23, which are used in determining custody, not those set out in MCL 722.27a(6), which govern parenting-time decisions and by the text of the order changing the child's primary custodian.

Another procedural error occurred when, rather than issuing a recommendation and proposed order, the referee stamped the judge's name on the order changing custody, thereby giving it immediate effect and depriving mother of the opportunity to object to the referee's recommendation before it became an enforceable order of the court. Absent a request for an emergency change (a request which was not made and for which there was no basis), during the 21-day period following a referee recommendation, the status quo is to remain in effect and if objections are filed, the objecting party is entitled to a de novo review or hearing before the judge. MCR 3.215(E)(4).[5]

---

[5] A trial court has the power to, "by an administrative order or by an order in the case, provide that the referee's recommendation will take effect on an interim basis pending a judicial hearing." MCR 3.215(G)(1). This provision, however, has no application to this case. First, the order issued by the referee under the judge's signature was a permanent, not "interim" order. Second, the court rule explicitly states that no administrative order may give interim effect to a referee's order that changes a child's custody. MCR 3.215(G)(3)(b).

The inappropriate use of this type of administrative authority was the subject of a recent federal court decision involving the removal of a child from his parents because his father had given him a "Mike's Hard Lemonade" at a baseball game without realizing that it contained alcohol. *Ratte v Corrigan*, 989 F Supp 2d 550, 553 (ED Mich, 2013). The Department of Health and Human Services (DHS) removed the child using pre-signed orders that the judge had provided for their use. *Id*. at 556. One of the issues was that the DHS wrote the order on a form that the judge had pre-signed. *Id*. The federal district court held that this practice violated due process. *Id*. at 561. Indeed, the court held that the judge could be sued individually because giving authority to someone else to issue orders under her authority was an "administrative act" and not a "judicial act" protected by immunity. *Id*. at 560-561. In this case, the practice allowing the referee to stamp orders with the judge's name is improper for exactly the same reasons. The referee had no authority to issue an immediately effective order changing custody. And the judge cannot give carte blanche permission for the referee to sign his name without the judge ever seeing the order or knowing anything about the case.

Mother timely objected to the March 4, 2015 order, and the case was reviewed by the judge who recognized that a full hearing had not taken place. However, rather than vacating the order and scheduling a proper hearing, the judge stated, "I am finding that the hearing itself was not complete and should be continued. As a consequence, I'm going to allow the interim order at this time to stand as an interim order until the evidentiary hearing is completed." The judge also added the word "interim" to the order that had been entered on March 4.

Despite being directed to complete the hearing, the record on appeal contained no indicating that it was ever completed. Accordingly, through the clerk's office, we directed the parties to provide copies of orders entered since the judge's order that the hearing be reconvened and completed. Based on the orders the Court thereafter received from the parties, we take judicial notice, MRE 201, of the subsequent proceedings.

Rather than completing the hearing as ordered by the judge, on May 11, 2015, the referee referred the case to the Friend of the Court for "an expedited review of parenting time." Mother filed objections to this order and on June 29, 2015, the judge issued an order stating that "the custody hearing has not been completed and . . . the Referee in this matter shall complete the custody hearing forthwith." Nevertheless, the court continued the "interim orders" until the conclusion of such hearing, which as of oral arguments before this Court had not yet been convened. Thus, the improperly decided and improperly issued March 4 order that changed primary physical custody from mother to father remains in effect.

The manner in which the change of custody was ordered was grossly improper. The order is vacated and the child shall be returned to the primary physical custody of mother. Thereafter, father, should he wish to do so, may file a proper motion for change of custody. Should he file such a motion, we further direct that all proceedings relevant be conducted on an expedited basis and that all such proceedings be conducted directly by the trial judge rather than referred to the referee. MCR 7.216(A)(7), (9).

Taxable costs to appellant as the prevailing party. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly